ELECTRONICALLY FILED
Crawford County Circuit Court
Sharon Blount-Baker, Circuit Clerk
2026-Oct-16 14:33:28
17CV-26-938
C21D01 : 30 Pages

IN THE CIRCUIT COURT OF CRAWFORD COUNTY, ARKANSAS
CIVIL DIVISION (I)

OSCAR STILLEY PLAINTIFF

v. Case No. 17CV-26-938

STACEY SHELLY, in her official capacity as
Crawford County Clerk; et al DEFENDANTS

**PLAINTIFF'S VERIFIED RESPONSE TO MOTION TO DISMISS COMPLAINT**

Comes now Plaintiff Oscar Stilley (Stilley, Plaintiff, or Plaintiff Stilley) and for his Verified Response to Motion to Dismiss states:

1. Defendant filed a "motion to dismiss and brief in support" September 17, 2026. Defendant raised 1) Arkansas Rules of Civil Procedure 12(b)(1) to challenge this Court's jurisdiction, 2) Rule 12(b)(6) to challenge the sufficiency of Stilley's statement of facts, and 3) issue preclusion or collateral estoppel.

2. The Court on Tuesday, October 6, 2026 extended the time for response to October 16, 2026.

3. Defendant is charged by law with maintenance of the voter rolls, to include the removal (or at least deactivation) of ineligible voters.

4. If Stilley is an ineligible voter, Defendant has not merely the right but also the duty to strike his name from the list of legal voters.

GOVERNMENT EXHIBIT
J

5. Indeed, on 9-17-2024, Defendant changed Stilley's registration from AVN (Active Voter Registration) to CON (convicted felon).

6. Stilley was not notified of this change or informed of any due process rights pursuant to Ark. Code § 7-5-903 (2025) or otherwise.

7. Stilley discovered the foregoing facts by a call to the clerk's office 10-15-2026.

8. All of Stilley's judgments have bogus restitution claims of $776,280, adjusted for interest and payments.

9. Arkansas Amendment 51 requires *inter alia* the payment of all restitution, see § 11(d)(2)(A), as condition precedent to restoration of voting rights.

10. The practical effect of Stilley's lawless federal criminal judgments is a lifetime bar on voting, or exercising any of the rights of registered voters, such as challenging certain acts of the Arkansas Secretary of State.

11. As to prior litigation referenced, particularly *Stilley v. Thurston et al*, the Arkansas Supreme Court ***did not*** decide Stilley's motions. Rather, it referred certain matters to the Crawford County Prosecutor's Office and to the County Clerk's Office.

12. Neither of the aforementioned officials are empowered to deprive Stilley of any rights without due process.

13. Stilley has alleged facts sufficient to prove, if true, that his voter registration is valid.

14. Defendant is entitled to challenge Stilley's voter registration, but only through means that respect Stilley's due process rights.

15. Plaintiff's allegations, if true, entitle him to complete relief, pursuant to the US and Arkansas Constitutions and statutes.

16. In the past, the Secretary of State of the State of Arkansas has attempted to remove alleged felons wholesale.

17. In fact the list of alleged felons contained hundreds of names of persons who were either not "felons" at all or were not "felons" within the meaning and definition of the Arkansas Constitution, Amendment 51. Attached as Exhibit "1" please find an August 12, 2016 KATV story about the erroneous felon list. Exhibit "2" is a letter from the Arkansas Civil Liberties Union to Secretary of State Mark Martin dated October 31, 2016, laying out the facts of the "felon purge" and suggesting that litigation might become necessary. All exhibits to this pleading are incorporated herein as if set forth herein word for word.

18. Stilley claims all rights under the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. §20501 et seq., and particularly §20507. In particular but without limitation, Stilley claims the right to request that local election officials obtain from federal prosecutors such information as they may have concerning a

federal conviction, relevant to that conviction's effect (if any) on Stilley's voting rights.

19. Stilley filed a timely petition under 28 USC 2255 in his federal criminal case, which was entered 12-15-2025. Dkt. 846.

20. US District Judge Sara E. Hill dismissed this petition more than 6 months later, under the pressure of a hunger strike by Stilley. Dkt. 865 & 866.

21. Stilley filed a motion to reconsider under Fed. R. Civ. P. 59(e), demonstrating that Judge Hill's two theories were utterly and inescapably barred by binding caselaw from both the 10th Circuit and the US Supreme Court. Dkt. 867. This motion tolls the time for appeal.

22. Judge Hill has not ruled on Docket #867, because she knows that Stilley is right, and a favorable ruling will compel her to order the government to respond.

23. Judge Hill knows that if the government is ordered to respond, all of Stilley's criminal convictions will be overturned.

24. Stilley intends to tender a provisional ballot at his customary polling place, pursuant to Ark. Code § 7-5-308 (2025), if his right to vote has not been finally decided by November 3, 2026. He will of course state his reasons and position truthfully, and comply with any reasonable directions of poll workers.

25. Stilley intends to vote a straight Libertarian ticket for federal races only, in order to simplify matters and ensure that Stilley is exercising a fundamental

federal constitutional right only, in a manner not reasonably subject to legal or moral reproach.

26. Stilley intends to check back later, to ensure that his votes were counted, or that some lawful reason was shown for not counting the votes on his ballot.

27. Stilley's well-pleaded facts entitle him to relief.

28. Plaintiff includes herewith a supporting brief.

WHEREFORE, Plaintiff Stilley respectfully prays that the Court deny the motion to dismiss; and for such other and further relief as may be appropriate whether or not specifically requested.

**VERIFICATION**

Plaintiff Oscar Stilley by his signature below pursuant to 28 USC 1746 and other appropriate authority declares under penalty of perjury that the foregoing facts are true.

Respectfully submitted,

By: /s/ Oscar Stilley October 16, 2026

Oscar Stilley
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 cell phone
oscarstilley@gmail.com

## BRIEF IN SUPPORT

### Background

This cause and the disposition of the Defendant's motion to dismiss requires some modest understanding of at least two cases. One is Northern District of Oklahoma (OKND) *US v. Stilley*, 4:09-cr-43-2. The other is *Stilley v. John Thurston, Secretary of State*, Arkansas Supreme Court # 24-453.

Stilley on 7-12-2024 read a story in the newspaper about an action of John Thurston, Secretary of State, (SOS) concerning the Arkansas Abortion Amendment of 2024. This infuriated Stilley, such that he went to the local County Clerk's Office that very day, and registered to vote. He did this precisely because the status of "registered voter" is the sole qualification for original action litigation in the Arkansas Supreme Court seeking relief against the Secretary of State's actions with respect to an initiative petition.

Stilley promptly set to work on a lawsuit. *Stilley v. John Thurston, et al*, Arkansas Supreme Court (Ark. Sup. Ct.) #24-453, filed 7-16-2024, challenged some of Thurston's official capacity actions with respect to the identified amendment.

Counsel for Mr. Thurston on 7-18-2024 filed a motion to dismiss. The first sentence was this:

> "Oscar Stilley—a convicted felon, disbarred lawyer, and fraudulently registered voter—brings this original action challenging the Secretary of State's rejection of an initiative petition."

Stilley responded 7-25-2024. Amongst other things, Stilley in his response acknowledged the judgment of conviction, the length of the sentence, a subsequent revocation, the length of the revocation prison sentence, the length of the new term of supervised release, and the fact that he was under supervision at the time of the filing. At page 7 of this response he noted the existence of Amendment 51 to the Arkansas Constitution and the fact that the validity of voter registrations can be challenged civilly. Stilley furthermore stated that if the SOS could prove that he was an ***actual*** (emphasis in original) felon, Stilley would march right back down to the County Clerk's office and personally ask that his name be stricken from the voter rolls.

On the following day, 7-26-2024, the Arkansas Supreme Court issued an order appointing Gary Arnold as a Special Master "to conduct a hearing and make findings of fact regarding the validity of Oscar Stilley's voter registration." On 8-29-2024, Stilley was ordered to post a $5,000 bond to pay the costs of the special master proceedings. Stilley promptly posted the bond, about 2/3 of which was consumed by the proceedings.

Stilley on 8-7-2024 filed a motion to suppress Docket 752, the revocation judgment resulting in a 3-month prison sentence plus an additional 33 months of supervision. On 8-12-2024 Stilley filed a motion to suppress Docket 338, the original judgment and conviction. Both of those motions were defaulted by Mr. Thurston and his 5 senior attorneys from the Arkansas Attorney General's Office.

Stilley on 8-6-2024 served discovery, including 1) requests for admissions, 2) interrogatories, and 3) requests for documents.[1] Stilley on 8-9-2024 filed a motion to expedite responses to discovery, attaching copies of the discovery. This motion was defaulted, but was not ruled upon.

Special Master Gary Arnold on 8-6-2024 ordered the parties to file witness and exhibit lists and briefs no later than 8-8-2024 at 5:00 PM.

Stilley filed a 29-page brief with one exhibit. Mr. Thurston on 8-8-2024 filed a list of witnesses and exhibits. The totality of their "brief" was the following statement:

> **Preliminary Matters to be Considered by the Special Master**
>
> 1. Petitioner's Motion to Suppress Judgment and Commitment Order # 752 filed on August 6, 2024 will need to be addressed.

Special Master Gary Arnold did not touch either of the motions to suppress, top, side or bottom. He did however, acknowledge the existence of Stilley's claims, as follows:

> 6. In his briefings and oral argument, Stilley vigorously contends the Judgment and Commitment Orders (Ex. 5 and Ex. 6) are void as having been obtained unlawfully through, among other things, fraud, perjury, and violation of his 6th Amendment right to assistance of counsel.
>
> 7. Stilley's appeals, based upon his briefings, have been denied. The judgments (Ex. 5 and Ex. 6) are final.

---

[1] This discovery closely tracks the discovery Stilley recently filed in federal court, asking Judge Hill to authorize it to be served on the government. Dkt. 868.

Stilley will later herein explain why the fact that Stilley's appeals have been decided adversely to him, and are "final" in the general sense, which is to say that a decision has been rendered and the time for rehearing is past, is not outcome determinative in this case.

Indeed, Special Master Gary Arnold's report and findings of fact contained no material facts that Stilley had not admitted in written pleadings. Stilley filed objections to the proposed report and findings of fact, but most of it was corrections of obvious typographical errors. There were some clarifications or objections to drawing conclusions by implication.

The Arkansas Supreme Court dismissed Stilley's case 9-5-2024, the day before Stilleys requests for admission would have been ***deemed admitted*** by operation of law.

## I. THIS COURT HAS SUBJECT MATTER JURISDICTION.

One of the Defendant's claims is that this Court does not have subject matter jurisdiction. She says at paragraph 2 that "A circuit court of this state has no authority to declare a criminal judgment void. … Binding Arkansas authority forbids the use of the Uniform Declaratory Judgment Act to collaterally attack a criminal conviction."

Interestingly, Defendant has case law on all propositions except those most crucial to her motion to dismiss. The Arkansas appellate courts do not consider arguments raised for the first time in a reply brief. *Myers v. Muuss*,

281 Ark. 188, 662 S.W.2d 805 (1984). The reason is that the appellee is not given a chance to rebut the argument. *Yellow Cab Co. v. Sanders*, 250 Ark. 418, 465 S.W.2d 324 (1971).

Although this is not an appeal and there is no appellee, the same principle applies here. Stilley objects in advance to any procedure that denies Stilley a fair chance to challenge, explain, or distinguish authority relied upon by the opposing party.

Caselaw is contrary to Defendant's claim. Consider *McConahay v. State*, 257 Ark. 328, 516 S.W.2d 887 (1974), starting with the opening paragraph:

> A jury first determined appellant guilty of grand larceny. Then pursuant to 888*888 the habitual offender act, Ark. Stat. Ann. § 43-2328 (Supp.1973), documents evidencing four previous convictions were introduced and appellant's punishment was assessed by the jury at 31½ years, the maximum, in the Department of Correction. Appellant asserts for reversal that the court erred in allowing the jury to consider as evidence of prior convictions two documents which do not reflect whether the appellant was represented by or had validly waived counsel. *The state with **commendable candor** concedes this is error.*
> (Emphasis added)

Now consider the following paragraph later on the same page:

> The state says, however, in the case at bar, that upon a remand it is willing to shoulder the heavy burden of proof in a *Denno* hearing to convince the trial court ***beyond a reasonable doubt*** that the appellant was represented by or validly waived counsel at the time of his previous convictions. If the state meets that burden of proof with respect to the admissibility of the deficient documents, then the state asserts appellant's sentence should stand and would comport with appellant's constitutional rights. If, however, the burden of proof is not met, then the state would have the election to retry the appellant or accept the minimal enhancement of his sentence based upon the two documents to which no

objection was made. We cannot agree with this suggested procedure. (Emphases added)

Stilley wishes to cast a vote in federal races in the upcoming election November 3, 2026. If the validity of his voter registration is not firm and fixed by Election Day, he intends to tender a provisional ballot pursuant to Ark. Code § 7-5-308 (2025). Of course, he most certainly intends to later inquire of the County Clerk in accordance with the statute, to verify 1) that his vote was actually counted, or 2) the reasons that it was not counted, together with any legal remedies available to him.

The core of Stilley's claim is that he was lawlessly denied the assistance of counsel in the "revocation" criminal prosecution that resulted in Docket #752, under which Stilley was at the time of his voter registration being supervised.

That specific claim can be distilled to two simple questions. One, was Stilley represented by counsel? Two, did Stilley validly waive counsel? Either proposition should be exceedingly easy to prove – *if true*. Since Docket #752 states, on the first page, "Oscar Stilley, pro se," the answer to the first question is plainly "no."

If a ***certified judgment and conviction*** can't be used in an Arkansas criminal case without proof that it was not taken in defiance of the 6th Amendment, how pray tell can a County Clerk use a judgment to *deprive a citizen of a fundamental constitutional right* without that same evidence? And

was it not a *circuit court* that somehow had both the power *and the duty* to verify that a criminal judgment was not taken contrary to the 6th Amendment?

Is the word "defiance" justified? Stilley challenges anyone reading this to provide a solitary example of such a blatant, willful, unjustified denial of the 6th Amendment assistance of counsel as the one exhibited in the procurement of Docket #752, in a criminal judgment entered in the past 50 years. The facts and particulars of Stilley's attack on that judgment may be found at Docket # 805.[2]

What do we have in the instant case? Stilley is currently a registered voter. Stilley wants to vote on federal races, but not at the expense of yet another amended criminal information with more counts and a lengthier potential prison sentence.

The Arkansas Supreme Court didn't have to send letters to both the local prosecutor and the county clerk – but they ***did***. So upon what theory does the Defendant claim the right "lay low" and prevent any declaratory judgment at all? Remember, she's not asking this Court to declare Stilley's voter registration ***invalid***. She's arguing that this Honorable Court does not *have the power* to pass upon the question *at all*.

---

[2] Older filings plus the latest docket items may be found in Courtlistener at https://www.courtlistener.com/docket/4364206/united-states-v-springer/?filed_after=&filed_before=&entry_gte=&entry_lte=&order_by=desc Newer filings less the latest batch are available at https://www.courtlistener.com/docket/4364207/united-states-v-springer/?filed_after=&filed_before=&entry_gte=&entry_lte=&order_by=desc

Stilley assumed that the County Clerk ignored the Arkansas Supreme Court's order because he received no notice of any change in his status as a legal voter. On 10-15-2026 Stilley called the clerk's office and learned that his July 12, 2024 voter registration was changed from AVN (Active Voter Registration) to CON (convicted felon) on 9-17-2024. In a separate call he received information, which he believes to be true, that Stilley's previous voter registration was cancelled in 2010 after he went to prison.

Thus Defendant in 2024 deactivated Stilley's voter registration, without notice to Stilley and opportunity to challenge the decision as required by Ark. Code § 7-5-903 (2025). That's a violation of due process, as will be shown hereinafter.

Arkansas Amendment 51, the "Arkansas Amendment for Voter Registration without Poll Tax Payment," was passed in November 1964. Section 19 of Amendment 51 reserved to the Arkansas General Assembly the right to amend sections 5-15, in the same way that initiated statutes may be amended by the General Assembly. This has been done on several occasions. Thus it is fair to state that the current version of that part of Amendment 51 is the product of decisions by the elected representatives of the citizens of Arkansas.

Consider the following pertinent parts of Section 11 of Amendment 51:

§ 11. Cancellation of registration.

(a) It shall be the duty of the permanent registrar to cancel the

registration of voters:
…………
(4) Who have been convicted of a felony and have not discharged their sentence or been pardoned;
…………….
(d)(1) It shall be the duty of the circuit clerk of each county upon the conviction of any person of a felony to notify promptly the permanent registrar of the county of residence of such convicted felon.

(2)(A) It is the duty of any convicted felon who desires to register to vote to provide the county clerk with proof from the appropriate state or local agency, or office that the felon has been discharged from probation or parole, has paid all probation or parole fees, or has satisfied all terms of imprisonment, and paid all applicable court costs, fines, or restitution.
……….
(D) Upon compliance with subdivision (d)(2)(A) of this section, the felon shall be deemed eligible to vote.
(e) **Within ten (10) days** following the **receipt or possession of information requiring any cancellation of registration**, other than under section 11(a)(1) of this amendment, the **permanent registrar shall cancel the registration, note the date of the cancellation, the reason for the cancellation, and the person cancelling the registration**.
…………….
(g) The permanent registrar is authorized, and may be directed by the county board of registration, to determine by mail check, house to house canvass, or any other reasonable means at any time within the whole or any part of the county whether active record registration files contain the names of any persons not qualified by law to vote. Further, upon application based upon affidavits of one (1) or more qualified voters by the prosecuting attorney for the county, ***the circuit judge of the county***, for good cause shown, **may order the permanent registrar to <u>make sure determination</u> or to <u>cancel the registration</u> of such unqualified persons**.
(Emphases added)

This authority absolutely lays waste to the Defendant's claim of lack of jurisdiction.

The history of the Arkansas Secretary of State's handling of persons

alleged to be disqualified felons is not good. Consider the last two paragraphs of a letter from the Holly Dickson of the Arkansas Civil Liberties Union to Secretary of State Mark Martin, in 2016:

> The NVRA expressly permits the removal of voters from the registration lists who have been convicted of a disqualifying crime. 52 U.S.C. § 20507(a)(3). We do note and respect the Secretary of State's authority to implement the eligibility requirements enumerated in the Arkansas Constitution. The problem, however, is that the ACIC data provided by the Secretary is badly flawed and resulted in the removal of eligible voters from the statewide registration list. The Pulaski County Clerk, the state's largest county, observed that **more than half of the 2,000 voters identified by the Secretary of State's office were improperly designated as being ineligible to vote**. <u>More than 300 people on the list were "completely innocent</u>."3 ACIC administrator Brad Cazort conducted an internal review and noted that a substantial number of the purported felonies never occurred or were categorized incorrectly.4 Improperly removed voters include ex- felons who have paid their debt to society and successfully had their voting rights reinstated, some who have been pardoned or had their records sealed, as well as **roughly 4,000 people who have never been convicted of a felony**.
>
> The Secretary of State's office flagged voters as having felony convictions without notice to the clerks that the data was unverified, that this was a departure from previous sources of data, or that the effort was a first time attempt to conduct an audit of voter eligibility based on a new source of data containing information dating back to the 1970's. County clerks in Arkansas have undertaken ad hoc and non-uniform efforts in response to receipt of this flawed data and in restoring the rights of voters in their respective counties. The Secretary has not provided the county clerks or county boards of election commissioners with updated, accurate information, regarding these flagged voters nor has your office taken steps to ensure a statewide restoration of voters wrongfully removed. Thus, eligible Arkansas voters' rights remain in jeopardy.
> (Emphases added)

What's the sum and substance of Stilley's litigation? It is to "make sure determination" of the true and lawful status of Stilley's voter registration. It is

plain from the text that the circuit judges have that power. Any claim that circuit judges have no such power is simply erroneous.

Defendant claims that Stilley should file a petition under 28 USC 2255. The problem with this thinking is that he did exactly that, and said petition was entered on the record 12-15-2025. Without controversy that pleading was timely and proper.

District Court Sara E. Hill refused to rule until Stilley checked in for a hunger strike some 46 days before his GCT release date. Then she dismissed it on two theories, neither of which had to do with timeliness. Dkt. 865, 866. Stilley on July 9, 2026 filed a timely motion under Fed. R. Civ. P. 59(e), which by rule tolls the time for filing a notice of appeal. Dkt. 867. More than three months later, that motion remains pending.

Why? Because Stilley is inescapably, unavoidably right – and Judge Hill knows it. Judge Hill embarrassed herself with her order and judgment of dismissal. She doesn't want to admit that she is wrong and that Stilley is right – so she does nothing.

Defendant requests that this Honorable Court dismiss Stilley's complaint. The crux of the theory is that Stilley's voter registration is invalid merely because the Arkansas Supreme Court sent a letter, and the clerk deactivated the registration, without giving notice to Stilley with opportunity to challenge the decision.

Stilley's name is currently on the voter rolls. Nobody challenges that fact. On 9-17-2024 it was *declared inactive* due to a felony conviction. If Stilley is not a validly registered voter, the clerk's decision should be upheld. The procedure should not be upheld – Stilley should have been promptly informed of the decision and given a right to challenge it consistent with the law. But if Stilley truly is not a legal voter, that fact should be reflected in the judgment of this Court and also on the records of the county clerk.

The right to vote in federal elections is a fundamental right protected by the US Constitution. As the US Supreme Court explained in *Wesberry v. Sanders*, 376 U.S. 1,17, 84 S. Ct. 526, 535,11 L. Ed. 2d 481 (1964).

> "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined."

Unlawfully obstructing the right to vote was in 1941 a crime – and *still is a crime*. *United States v. Classic*, 313 U.S. 299 (1941). *Classic* involved an indictment which was dismissed by the district court. The United States took the matter to the US Supreme Court, which reinstated the indictment.

Stilley is entitled to submit a provisional ballot pursuant to AR Code § 7-5-308 (2025) **Provisional ballot procedure**. It is not necessary to reproduce the statute or elaborate on the process. Stilley has a high degree of confidence in the honor and competence of Defendant and her learned counsel. We should be

able to resolve the legal issues in time for the upcoming election, without extraordinary measures.

Stilley has no desire to violate the law. If Stilley is in error, this Court should so rule. If Stilley is not in error, he should get declaratory judgment that allows him to peacefully exercise his constitutional rights. Stilley is pursuing declaratory judgment through this proceeding, a lawful means protected by the 1st Amendment right of peaceful petition. He should not be forced to tender a provisional ballot.

The **National Voter Registration Act of 1993** (NVRA), 52 U.S.C. §20501 et seq, holds the key to making this an easy case. Subsection (g) of 52 U.S.C. §20507, **Requirements With Respect to Administration of Voter Registration**, is set forth below:

> (g) **CONVICTION IN FEDERAL COURT**
>
> (1) On the conviction of a person of a felony in a district court of the United States, the United States attorney shall give written notice of the conviction to the chief State election official designated under section 20509 of this title of the State of the person's residence.
>
> (2)A notice given pursuant to paragraph (1) shall include—
>
> (A) the name of the offender;
>
> (B) the offender's age and residence address;
>
> (C) the date of entry of the judgment;
>
> (D) a description of the offenses of which the offender was convicted; and
>
> (E) the sentence imposed by the court.
>
> (3) On request of the chief State election official of a State or other State official with responsibility for determining the effect that a conviction may have on an offender's qualification to vote, **the United States attorney shall provide such additional information as the United States attorney may have concerning** the offender and **the**

**offense** of which the offender was convicted.

(4) **If a conviction** of which notice was given pursuant to paragraph (1) **is overturned**, the United States attorney **shall give the official to whom the notice was given written notice of the vacation of the judgment**.

(5) The chief State election official shall notify the voter registration officials of the local jurisdiction in which an offender resides of the information received under this subsection.

(Emphases added)

Stilley filed and served requests for admissions on the Defendant. The Defendant in her responses filed 9-22-2026 thrice stated that she "lacks sufficient knowledge to either admit or deny this Request and, the same are therefore denied."

These responses are 1) directed to outcome determinative requests for admission, 2) in violation of Arkansas Rule of Civil Procedure 36(a), which requires parties responding to requests for admission, when they deny knowledge, to *state* (under oath, of course) that they have "...made reasonable inquiry and that the information known or readily ascertainable by him is insufficient to enable him to admit or deny." Also, the same rule requires respondents to admit those parts of the request that can be admitted, and deny the remainder.

Stilley has already stated that the core issue can be distilled to two questions, all related to Docket 752, entered 11-23-2022.

1) Was Stilley represented by counsel?

2) Did Stilley validly waive counsel.

Defendant should confess to paragraph 1 because at the top of the page, in the place for "defendant's attorney" it says "Oscar Amos Stilley, pro se." Defendant is a fine public servant, a valuable asset to this community. Perish the thought that Stilley would do less than his best to assist her to uphold the high standards of her office. She deserves a chance to voluntarily change her responses.

Stilley has previously challenged Defendant to come up with so much as a *scintilla* of evidence, a mere *speck*, for the proposition that Stilley validly waived 6th Amendment assistance of counsel in the revocation proceedings held 11-21-2022. Stilley did this to demonstrate in the mind of Defendant and her learned counsel, that it matters not one whit whether the standard is "beyond reasonable doubt," or "scintilla." The defense can't meet *either one*.

However, that heavy burden shouldn't be left solely on the shoulders of Defendant and her esteemed counsel.

## II. PLAINTIFF IS NOT BARRED BY COLLATERAL ESTOPPEL.

The US Attorney is *statutorily* obligated to help her. A county clerk might plausibly plead ignorance of the facts concerning Stilley's claim. The US Attorney full well knows both the facts and the law of Stilley's 6th Amendment claims. They're sweating bullets. It's time to turn up the heat. It's time to show them that they can't *stonewall forever*.

If there is so much as a scintilla of evidence that Stilley validly waived

counsel, for his "revocation" criminal trial 11-21-22, the US Attorney is duty bound to provide that information – and all of it – both to her and to the Secretary of State of the State of Arkansas. If no such evidence exists, he is equally duty bound to confess to that fact, in writing.

Stilley plans to serve both the United States and the Secretary of State, as soon as reasonably practicable. But that is quite irrelevant to the statutory obligations of the US Attorney. Subsection (g) of 52 U.S.C. §20507 doesn't presume the United States will be party to litigation. Rather, the presumption is the opposite. It is presumed that the US Attorney will provide any information relevant to a determination of the ***legal effect*** of a conviction on a citizen's right to vote, on the basis of polite request.

Charles Anthony O'Reilly is currently lead counsel for the government on Stilley's federal case. Stilley on August 31, 2026 sent him an email and asked him if he'd be willing to talk. Stilley received no response until 9-16-2026. Two hours and three minutes after Stilley emailed electronic versions of the complaint and other case initiating documents to Ms. Shelly, Mr. O'Reilly sent an email saying that he thought the litigation was over, but would respond if ordered so to do. Clearly the Defendant and her learned counsel know how to contact the proper US Attorney.

Defendant cites *Graham v. Cauthorn*, 2013 Ark. 160, 427 S.W.3d 34 (2013) for his claim of collateral estoppel. Stilley will reproduce the following

from page 43 of the SW reporter:

> Collateral estoppel, the issue-preclusion facet of res judicata, bars relitigation of issues of law or fact previously litigated, provided that the party against whom the earlier decision is being asserted had a *full and fair opportunity to litigate* the issue in question and that the issue was essential to the judgment. *E.g.*, *Morgan v. Turner*, 2010 Ark. 245, 368 S.W.3d 888. To apply collateral estoppel, the following elements must be present: (1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) ***the issue must have been actually litigated***, (3) the issue must have been determined by a valid and final judgment, and (4) *the determination must have been essential to the judgment*. *Id.*
> (Emphases added)

Stilley did not get a full and fair opportunity to litigate the issue in the Arkansas Supreme Court. Here's what the Court had to say about the issue:

> We have jurisdiction over Counts I and IV as they relate to the Secretary's actions and decisions in his sufficiency determination of the initiated ballot petitions. See Ark. Const. art. 5, § 1. Because Counts I and IV pertain to the Secretary's sufficiency determination, we address them together. Under Arkansas law, either the sponsor of the statewide initiative petition or a registered voter may challenge the Secretary's decision finding a petition insufficient. Ark. Code Ann. § 7-9-112(a). In his petition, Stilley claimed standing to bring this action as a registered voter. However, as the special master found, Stilley was convicted of a felony in 2009, **which should have resulted in the cancellation of his voter registration**. See Ark. Const. amend. 51, § 11(a)(4) (requiring permanent registrar of the county to cancel the voter registration of a convicted felon). **And because Stilley has not completed his term of supervised release, he remains ineligible to register to vote**. See Ark. Const. amend. 51, § 11(d) (requiring that a convicted felon be discharged from probation or parole and that he satisfy all terms of imprisonment before becoming eligible to vote). We therefore **find that Stilley was ineligible to vote** and that **he was dishonest on his Arkansas Voter Registration Application when he attested that he had never been convicted of a felony**. As **Stilley is not a lawfully registered voter**, he lacks standing under section 7-9-112 to challenge the Secretary's sufficiency determination. We dismiss Counts I and IV.

(Emphases added)

None of the material in bold was found by the Special Master. Stilley had already, in writing, *confessed* to all the underlined facts in that paragraph. The Special Master ***did not*** find that Stilley was ineligible to register to vote. He ***did not*** find that Stilley was dishonest on his Arkansas Voter Registration Application. He ***did not*** say that the 2009 (it was actually 2010) conviction should have resulted in the cancellation of his voter registration.

Furthermore, it is patently absurd to claim that Stilley "attested that he had never been convicted of a felony." The qualifying language on the form "I have not been lawfully convicted of a felony by a lawful court" is fair notice, to any person of ordinary intelligence, that Stilley had a felony conviction but challenged its lawfulness.

Please note that you do not in this dispositive paragraph see ***one word*** about the 2022 revocation conviction. The court plainly knew about the revocation conviction, because they mentioned it previously in their decision. They say that Stilley's 2009 (actually 2010) conviction should have resulted in ***cancellation*** of his voter registration. That judgment, #338, was revoked by judgment and conviction #752, which was entered 11-23-2022.

They said ***exactly nothing*** about whether or not #752 was valid or void. They said ***exactly nothing*** about whether #752 should have operated as a *legal bar* to Stilley's ***subsequent*** voter registration on 7-12-2024.

A "complete denial of the opportunity to be heard on a material issue is a violation of due process, which is never harmless error." *Republic Nat'l Bank of Dallas v. Crippen*, 224 F.2d 565, 566 (5th Cir. 1955).

Let us not forget this fact. The Arkansas Supreme Court within the decision said that declaratory judgment actions must originate in circuit court. That being the case, upon what basis should we conclude that bare opinions based on 1) no evidence and 2) no factual or legal findings from the Special Master, should be treated as *de facto declaratory judgments?*

Stilley has already shown what the five fine lawyers from the Arkansas Attorney General's Office thought about Stilley's motion to suppress #752. They thought the Special Master and the Court should address the matter.[3] ***Neither*** did. For anyone who wishes to contest that claim, the docket and filings in that case are a matter of public record, available online. Furthermore, a more intuitive docket and set of docket items is available by a link at page 13 of #805.

Stilley posted a $5,000 bond to find the facts, then was *de facto* denied any discovery whatsoever. A substantial sum of money to find facts necessarily implies material questions of fact. Material questions of fact imply a right to discovery. See *Pledger v. Carrick*, 362 Ark. 182, 208 S.W.3d 100, 105 (2005), where the Court, citing to *First Nat. Bank v. Newport Hosp. & Clinic, Inc.*, 281

[3] On August 8, 2024, the date of their witness & exhibit list and brief, Stilley had not yet filed his motion to suppress the original judgment, #338.

Ark. 332, 663 SW 2d 742 (1984), said:

> However, before rendering judgment the Court must be satisfied not only that there is no issue as to any material fact, but also that the moving party is entitled to a judgment as a matter of law. Where, as in this case, the decision of a question of law by the Court depends upon an inquiry into the surrounding facts and circumstances, the Court should refuse to grant a motion for a summary judgment until the facts and circumstances have been sufficiently developed to enable the Court to be reasonably certain that it is making a correct determination of the question of law.

See also *Hickman v. Taylor*, 329 US 495, 507 (1947) where the US Supreme Court said:

> Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.

Compounding the issue is that Stilley had pending discovery that would have proven his claim, beyond any reasonable doubt. There was no need for haste, as the Court had on August 22, 2024 decided *Cowles v. Thurston*,[4] 2024 Ark. 121, 695 S.W.3d 60 (2024) in a 4-3 decision. Stilley filed an emergency motion the same day, trying to keep the challenged amendment on the ballot. Stilley pointed out that this was a lawful request, and necessary to preserve legal rights in case of 1) a petition for rehearing, 2) a petition for certiorari in the US Supreme Court, or 3) Stilley's legal claims which weren't already decided in *Cowles*.

[4] *Cowles v. Thurston* was a companion case filed by the sponsors of the Arkansas Abortion Amendment of 2024.

The Arkansas Supreme Court scheduled all necessary pleadings, considered the pleadings, and denied the motion the same day.

What's the point of these facts? There was absolutely no logical and lawful reason to dismiss Stilley's petition ***on the very day*** before his requests for admissions would have been deemed admitted by operation of law. There was no lawful and honorable reason not to rule on Stilley's two motions to suppress, or his motion to expedite discovery. What had initially been necessarily hectic litigation due to the election calendar had suddenly lost all ***actual*** urgency whatsoever, late in the evening of August 22, 2024. Indeed, Stilley in the last two paragraphs of his objections to the Special Master report, filed two days before the dismissal order, made it clear that this was not his brief, and he planned to file a brief. He also made it clear he was waiving none of his claims or legal arguments.

## III. PLAINTIFF HAS PLEADED SUFFICIENT FACTS.

Consider this part of the second paragraph of the decision in *Cook v. TDCJ-TPD, et al*, 37 F.3d 166 (5th Cir. 1994):

> Cook was convicted of burglary in 1964. In 1982, Cook was convicted of indecency with a child, and received 20 years, which included a ten-year enhancement for the 1964 conviction. In 1987, this Court voided Cook's 1964 conviction because Cook was indigent and without counsel at his probation revocation hearing in 1964. *Cook v. Lynaugh*, 821 F.2d 1072 (5th Cir. 1987). The Court also reversed Cook's 1982 conviction, holding that Cook's counsel was constitutionally ineffective for failing to investigate the validity of the 1964 sentence.

It is a virtual certainty that Cook neither appealed nor pursued habeas relief following his 1964 conviction. That didn't matter. The 1964 judgment was void, even prior to a judicial pronouncement, and could never be upgraded into a valid criminal judgment.

Stilley pleaded all the facts necessary to win on this issue. In fact the Defendant at paragraph 1 of her motion was kind enough to cite to the paragraphs of Stilley's Complaint setting forth the necessary facts.

A bigger issue is the fact that Stilley does indeed have a pending petition under 28 USC 2255. Stilley has been trying to get a decision on the merits. Nobody – ***nobody*** – even pretends that Stilley's petition under 28 USC 2255 has been decided on the merits.

Claims of ineffective assistance of counsel are almost never available on direct appeal. Consider the following paragraph from *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (*en banc*):

> We reaffirm and reemphasize the central principle laid down in *Beaulieu v. United States*, 930 F.2d 805, 806-07 (10th Cir.1991). Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are *presumptively dismissible*, and **virtually all will be dismissed**. See, e.g., id. at 808; see also *United States v. Coleman*, 9 F.3d 1480, 1487 (10th Cir.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1234, 127 L.Ed.2d 578 (1994).
> (Emphases added)

On the very next page we learn that an appellee in a criminal case is ***never*** required to raise ineffective assistance of counsel claims on direct appeal.

The *en banc* 10th Circuit explained its reasoning as follows:

> Consistent with this principle, we **overrule** that part of *Beaulieu* which requires some ineffectiveness claims to be brought on direct appeal. Those are claims where the record seems complete for purposes of appellate review. We warned in *Beaulieu* that failure to bring such a claim could result in a procedural bar preventing the claim from being raised in collateral proceedings. 930 F.2d at 807. As indicated, such a rule is inconsistent with the overriding principle that virtually all claims — even those which might conceivably be brought on direct appeal — should be brought in collateral proceedings. **The threat of default and resulting procedural bar has doubtless resulted in many claims being asserted on direct appeal only to protect the record.** This, of course, unnecessarily burdens both the parties and the court with a presentation and review leading only to dismissal for reassertion in a petition under 28 U.S.C. § 2255. Thus, while ordinarily the procedural bar rule of *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), applies to section 2255 proceedings, see *United States v. Allen*, 16 F.3d 377 (10th Cir. 1994), **we hold that it does not apply to ineffective assistance of counsel claims.** See *United States v. DeRewal*, 10 F.3d 100, 101 (3d Cir.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1544, 128 L.Ed.2d 196 (1994).
> (Emphases added)

Whether or not Stilley had the *option* of raising 6th Amendment violations on direct appeal is, for this proceeding, immaterial. For at least the past century, the complete denial of the assistance of counsel, during a critical stage of the proceedings, results in a VOID judgment. Not void***able***, but VOID. As the US Supreme Court explained in *Moore v. Dempsey*, 261 US 86 (1923):

> If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a JURISDICTIONAL BAR to a valid conviction and sentence depriving him of his life or his liberty. The judgment of conviction pronounced by a court without jurisdiction is VOID, and one imprisoned thereunder MAY OBTAIN RELIEF BY HABEAS CORPUS (Emphases added).

The complete denial of counsel, whether for the entire case or only for some critical stage of the proceedings, is merely the "most obvious" example of ineffective assistance of counsel. The US Supreme Court in *United States v. Cronic*, 466 US 648, 659 (1984) explained as follows:

> In our evaluation of that conclusion, we begin by recognizing that the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated. See *United States* v. *Valenzuela-Bernal,* 458 U. S. 858, 867-869 (1982); *United States* v. *Morrison,* 449 U. S., at 364-365; *Weatherford* v. *Bursey,* 429 U. S. 545 (1977).[22] Moreover, because we presume that the lawyer is competent to provide the guiding hand that the defendant needs, see *Michel* v. *Louisiana,* 350 U. S. 91, 100-101 (1955), the burden rests on the accused to demonstrate a constitutional violation.[23] There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.[24]
>
> 659*659 ***Most obvious, of course, is the complete denial of counsel.*** The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.[25] Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable. No specific showing of prejudice was required in *Davis* v. *Alaska,* 415 U. S. 308 (1974), because the petitioner had been "denied the right of effective cross-examination" which " `***would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it***.' " *Id.,* at 318 (citing *Smith* v. *Illinois,* 390 U. S. 129, 131 (1968), and *Brookhart* v. *Janis,* 384 U. S. 1, 3 (1966)).[26]
> (Emphases added)

The Special Master's findings about appeals and finality of the appeal simply don't matter. He focused on proceedings that virtually never allow claims

such as Stilley's core claim, and in which such claims are ***never*** required to be brought. He said nothing about the fact that Stilley still had a lawful, indeed undefeatable claim under 28 USC 2255.

## CONCLUSION

This Court should deny Defendant's motion to dismiss.

Respectfully submitted,

By: /s/ Oscar Stilley October 16, 2026

Oscar Stilley
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 cell phone
oscarstilley@gmail.com

## CERTIFICATE OF SERVICE AND COMPLIANCE

Stilley by his signature above certifies that on the date stated above this pleading was served via the Court's electronic filing system to all parties entitled to service; and that this document proper doesn't contain links to external papers or websites.